```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      )
                              )
     v.                       )    Criminal No. 04-306
                              )
HASSAN JALLOH                 )
     a/k/a Sahjor C. Barrie   )
```

MEMORANDUM ORDER

Gary L. Lancaster,
District Judge.                                December 8, 2006

      Defendant, Hassan Jalloh, a/k/a Sajhor C. Barrie, has been indicted for knowingly possessing a fraudulently obtained United States Permanent Residence Card in violation of 18 U.S.C. § 1546. Defendant has standing to present this motion. The principal issues presented by the motion are whether incriminating statements that defendant made to customs and immigration agents were voluntarily made, and whether his Miranda rights, specifically his right to counsel, were violated. The government opposes the motion contending that the initial questioning of defendant by customs officials was routine and did not require Miranda warnings. The government further contends that once agents had probable cause for an arrest, they advised defendant of his Miranda rights, that defendant exercised those rights, and

any statements defendant made thereafter were initiated by him and voluntary.

The court has considered the evidence introduced at the hearing and is prepared to rule. For the reasons set forth below, defendant's motion to suppress will be denied.

I.  FINDINGS OF FACT

Customs and Border Protections (CBP) Officers Thale-Lembo and McConaughey, and Immigrations and Customs Officer Opferman, testified at the hearing. The court finds each of them to be a credible witness. Defendant also testified at the hearing. To the extent that his testimony contradicts that of the officers, the court credits the officers' testimony. The court finds that at approximately 4 p.m., on October 23, 2004, defendant arrived at the Pittsburgh International Airport on an international flight from London. Defendant presented a Sierra Leone passport and a United States Legal Permanent Residence (LPR) card to the Customs and Border Protection agents in the name of Sajhor C. Barrie. Defendant's documents were scanned into "U.S. VISIT", a computer program that verifies the validity of identification documents and cross-references them with law enforcement databases. U.S. VISIT indicated that there were no biometrics on file for defendant. The agent then proceeded to

take defendant's left index fingerprint, at which point the computer screen flashed red and indicated that the fingerprint belonged to a Hassan Jalloh who was on a FBI watch list. There was no testimony indicating why Hassan Jalloh was on a watch list.

Defendant was referred to a secondary area for further investigation as to his true identity and his admissibility into the United States. Officer Thale-Lembo asked defendant whether he had ever used the name Hassan Jalloh, which he initially denied. Agents continued to question defendant about his apparent dual identity. All questioning and communication with defendant was done in the English language, which defendant understood.

Officer McConaughey searched defendant's bags and found identification documents in the names of both Hassan Jalloh and Sajhor Barrie. Officer McConaughey took defendant's fingerprints with ink (because the more advanced digital fingerprint machine was not working) and faxed them to the FBI who confirmed that the fingerprints belonged to Hassan Jalloh. The FBI report revealed that Hassan Jalloh, a/k/a Sajhor C. Barrie, had been arrested in Maryland for second degree assault. His birth place was identified as Afghanistan.

After the FBI confirmed what the government asserts is defendant's "true identity," Agent McConaughey proceeded to arrest defendant and read defendant his Miranda rights. Defendant signed a form indicating that he understood his rights and initialed each right listed on the form with the initials SB for Sajhor Barrie. In response to the question "Do you wish to have a lawyer or any other person present to advise you?", defendant wrote "Both". In response to the question "Are you willing to answer my questions as this time?", defendant responded "No". In spite of this, defendant requested to speak privately with the Port Director, but then changed his mind. Defendant was not questioned after he exercised his right to remain silent. Defendant was at the airport for approximately four hours.

CBP agents transported defendant to Allegheny County Jail, where they used the digital fingerprint machine to again verify defendant's identity. The information from the FBI database again identified the fingerprints as belonging to a Hassan Jalloh. Defendant was detained at the Allegheny County Jail for possible immigration violations and suspected terrorism activities which resulted in defendant's placement on the FBI watch list. CBP officers were never able to ascertain why defendant's name was on the watch list. Defendant remained in the Allegheny County Jail for three days.

On October 26, 2004, Immigration and Customs Enforcement (ICE) agents retrieved defendant to process him for immigration violations. While being transported, defendant tried to initiate conversations with the agents because he wanted to prove that he was not a terrorist. ICE Agent Opferman did not allow defendant to make any statements until they had arrived to the ICE office, at which point he administered <u>Miranda</u> warnings. Defendant again signed a form stating that he understood his rights, and further signed a waiver of those rights. Defendant then proceeded to give the statements he now wishes to suppress.

II.   <u>REASONS FOR THE DECISION</u>

    A.   <u>PRE-MIRANDA STATEMENTS</u>

Although it seems that the statements that defendant wishes to suppress were all made *after* his <u>Miranda</u> warnings were given, we will nonetheless address defendant's argument that he was entitled to <u>Miranda</u> warnings prior to any questioning at the airport.

The Court of Appeals for the Third Circuit has recently addressed the issue of when *Miranda* warnings are necessary at border interrogations. In <u>United States v. Kiam</u>, 432 F.3d 524, 529 (3d. Cir. 2006), the court reaffirmed "the well-established authority of border inspectors to ask questions of those entering

5

the United States. A person seeking entry into the United States does *not* have a right to remain silent." (internal citations omitted) Further, the court noted that an alien at the border must convince an inspector of his or her admissibility to the country by affirmative evidence, even if that border is the international airport. See, e.g., 8 C.F.R. § 235.1(d)(1) ("Each alien seeking admission...must establish to the satisfaction of the inspecting officer that the alien is...entitled, under all of the applicable provisions of the immigration laws and this chapter, to enter the United States.") The court stressed that while an alien is in "custody" until he is admitted to the country, "normal Miranda rules simply cannot apply to this unique situation at the border." Id. The Customs and Border Protections inspectors do not have to provide Miranda warnings when questioning aliens in an effort to determine admissibility. Only if the inspector's questions "objectively cease to have a bearing on the grounds for admissibility and instead only further a potential criminal prosecution," Miranda warnings are required. Id.

The initial questioning in this case revolved around defendant's "true identity" in an effort to determine his admissibility into the country. It was only after the agents received FBI confirmation that defendant's full fingerprint set

matched a "Hassan Jalloh" that his non-admissibility was clearly established. At that time, CBP agents had reason to believe that a crime was being committed and gave defendant his Miranda warnings. Defendant's motion to suppress any pre-Miranda statements is denied.

    B.   POST-MIRANDA STATEMENTS

Defendant next argues that the government violated his right to counsel when ICE agents questioned defendant three days later without an attorney present. The government bears the burden of establishing by a preponderance of the evidence that a defendant has voluntarily, knowingly, and intelligently waived his constitutional rights. Miranda v. Arizona, 384 U.S. 436, 473-75 (1966). Once it is determined (1) that a suspect's decision not to exercise his rights was uncoerced, (2) that he at all times knew that he could stand mute and request a lawyer, and (3) that he was aware of the state's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law. Once defendant invoked his right to counsel, he should not have been subject to further interrogation by law enforcement officials until counsel had been provided, unless "the accused himself initiates further communication, exchange, or conversations with the [law

enforcement agency]." Edwards v. Arizona, 451 U.S. 477, 485 (1981).

In this regard, the court must review the totality of the circumstances surrounding the statement. The totality of the facts surrounding defendant's arrest and advice of rights demonstrates that he was fully advised of those rights, and that he was able to exercise those rights at the time of his arrest. All questioning ceased once defendant requested an attorney.

The Immigration and Customs Enforcement agents did not take defendant from the Allegheny County Jail to question him without counsel but were going to process defendant for immigration violations. ICE Agent Opferman testified credibly that it was defendant's wish to explain the reasons behind his apparent "dual identity." Agent Opferman would not let defendant make any statements until he read defendant his Miranda warnings rights. This time, defendant not only signed a statement saying he understood those rights, but also waived them. Under these circumstances, it cannot be said that his right to counsel was violated.

Finally, defendant argues that even if he did initiate the conversations with the ICE agents, his will was overcome by the government's allegations that he was a terrorist. Again, we have evaluated the totality of the circumstances. While defendant

8

testified that he was accused of being a terrorist at the airport, defendant's contention that accusations that he was a terrorist overcame his will *three days later* is untenable. Terrorist accusations may have prompted defendant to want to clear his name, but these allegations were not made by the ICE agents who retrieved defendant from the Allegheny County Jail.

Even assuming that mere terrorist accusations, without more, would be enough to coercively overcome a suspect's will, these agents did not accuse defendant of having terrorist ties. Moreover, defendant does not allege that he was threatened or coerced by these agents, or any other government officials for that matter. To the contrary, ICE agents again specifically advised defendant of his right to silence, his right to have an attorney, his right to stop questioning at any time, and that anything he said could be used against him in court. Defendant indicated that he understood these rights and voluntarily waived them. The agents did not threaten or physically abuse him. He was alert, able to understand and communicate with them, and was not suffering from any apparent physical or mental condition that might render his statement something other than voluntary and intelligent. Given these factors, defendant's statements was validly obtained.

The motion is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Criminal No. 04-306 |
| ) | |
| HASSAN JALLOH ) | |
| a/k/a Sahjor C. Barrie ) | |

ORDER

Therefore, this 8th day of December, 2006, IT IS HEREBY ORDERED that Defendant's Motion to Suppress [document #23] is denied.

BY THE COURT:

_____, J.

cc: All Counsel of Record